And we will proceed to the next case on calendar, which is Seneca versus Halla. Case status, two of them. Still both. Consolidated. Well, he's been calling one, because the other one, he's got to be on the phone. Yeah, I know. But I mean, consolidate. This is ten minutes for both cases. Don't call one case and then the other case. No, it's not. I do know. There are two. I'm calling Seneca versus Halla. Separate case. Give him another 10 minutes. Separate arguments. OK. OK. The case before us is Seneca versus Hallahan. As part of the committee, it says, thanks to a senior evaluation from Dr. Steve Gray, an evaluation, and part of the thing is that the state of the job, that this evaluation is going to be, and it's not a job, and it's a community, but the dean of staff and the board of trustees, we are able to evaluate his probation, as well as his compliance and his financial issues. Thank you, Mr. President. The problem with his probation is that he's in trouble, despite having a very strong evidence that this young man needed an evaluation, and even if it was part of his agreement, he never validated it. Well, in the first sentence around, what was the prejudice? He got a very lenient sentence from the judge. It was on the reoffending that the two 15-year sentences were imposed. Consecutive. And consecutive. The first one around was... ...the maximum. And it's not the maximum, it's the aggregate. Okay. And it wouldn't be evaluated. It would have probably... It would have probably been found out for a certain amount of time, and he would have been put in that place where he was sent off, and put back another 30 years. So you think that... I just want to understand, I'm not sure. If the judge had been given evidence of Mr. Seneca's problems, on the first sentence, the lifetime probation sentence, what would likely have been available to him that the judge, you think, would likely have imposed as an alternative to what he actually did? What would the problems be? And then maybe after that... What was the identifier that you were looking to that would have given the court, counsel, or anyone else associated with Mr. Seneca some indication that there was this mental issue that he was having? I'm sorry. Why it's all right to... Thank you. We know the Strickland standards. Believe me. What's the prejudice on the second? I'm sorry. No, I just wanted to say, what's the... Where's the prejudice on the second, the two 15 years, the sentencing? You know, aren't you saying that he should have done something... If he didn't do it on number one, he should have done it on number two, right? Yeah. Well, maybe I don't understand the argument. I thought you said that when he first pled out, the court wasn't presented with the information that may have triggered a different kind of sentence or treatment, or he wouldn't have taken the plea. Okay, so now we've got that, but that's what happened. Now he comes out, he offends, and he's back before the judge revokes probation, right? And he imposes 30 years of hard time. Now, was counsel ineffective at that stage as well? Okay, and so what's the prejudice at that stage? What would he have done that would have changed anything that we should be looking to? It was, you know, his son had all the different counsels that he was able to. And the reason counsel had tried was because she had a connection to him and he had to be there. He didn't know what her experience was, and he had to be there. And the issues that he might have, they might have with his child, he could have used counsel. And I included that. Even though we're not part of his, you know, sort of previous marriage trial, when I looked at his trial, third trial, and saw that he testified at trial, honestly, to bring down that guy, it was very disturbing. I'm not an expert on this kind of thing. I don't know what kind of problems he had and how he could be affected. But he appeared confused. He didn't know why he did certain things. And he's put on stand. And if the proper evaluation for the new guidance we would have, the new counsel probably would have said, oh, there's definitely a difference that we should have on stand. Kelsey, you're making reference to certain mental issues that Mr. Seneca had, but the issues that he reviewed were pedophilia, among other things, passive-aggressive personality disorder. Those could be diagnoses for maybe many people  or that are also in prison. They're not necessarily such mental disabilities that would prevent one from being able to effectively assist in his or her defense or a number of other things that would relate to the IAC that you're talking about. Now, are you saying that is that what you're looking at, that those are the mental issues that made him so confused, so unable to understand the nature of the proceedings? If there's no evaluation, this is all we now have from the juvenile matter. It kind of gives us, the counsel should have looked at it and said, there's problems. So you're putting more emphasis on the fact that the state did not follow through with one of the terms of the agreement, which was to perform the mental evaluation. Exactly. He sure may. Thank you. Thank you. May it please the court, my name is Assistant Attorney General Robert Walker. I am on behalf of the state of Arizona in response to this case. Counsel was arguing that the public defender, I agree, was ineffective for not moving what in Arizona we call rule 11 curing. Rule 11 curing is supposed to be ordered by the court's correspondent or at the request of the prosecutor's defense attorney in front of his defense counsel. Whenever they have reasonable cause to believe that the defendant is unable to understand the proceedings, he's unable to control the defense attorney. Now, what the state court has provided in this particular case, people are ready to make a proposal if there's more reasons to move. There's nothing. There's no affidavits. There's nothing to indicate that he had any sort of mental disability outside of what was in the pre-sum report. There's nothing to indicate that he was incompetent at the time. I think what's very important for this court to realize is that the documents that counsel is referring to that indicate that he had, for example, I think it was attention deficit disorder and there were a few others that were listed of a psycho-sexual nature, they were attached to a sufficient purview to the Arizona Court of Appeals. Under state v. Shatner and state v. Sayers, the Court of Appeals can't move anything that's not provided to you by the state court. So how surprising is that the trial court... Well, but isn't that the essence of the claim, that the trial court wasn't given the kind of information that would have triggered its sui sponte obligations under Arizona Rule 11? They're not faulting the trial court here. They're faulting counsel. Well, actually, part of my argument is that the trial court has a sui sponte obligation to move a rule about an appearance. And there's a case called state v. Our official v. Superior Court that states that in concise stroke. I think it's very important to note that the trial court had the benefit, by the way, of a pre-session court that indicated that he did have evaluations in the streets of Washington in 1986. And there was a juvenile file, by the way, that we take as part of the record, and I attached in the excerpt to the record from a Dr. Steve Rayfield case that indicated that before he was actually transferred from juvenile court to adult court, he was evaluated. And that particular doctor had said that he was already going to find a place and not remove him. So if you write about the time that he's going into adult court, you have a doctor who's examining him. He doesn't have a problem. It's an official record. The trial court has this. The trial court has an opportunity to review the defendant. The trial counsel had an opportunity to do so. But there's nothing in the record that indicates that assuming the criminal is one of these fragments of a certain group of appeals and they have these ailments, there's still nothing there to indicate that those ailments prevented him from being able to understand what was going on. And when you take a look at the record, I don't think there's any doubt that first of all, when he came into the offense, he was working at the service center. He was operating a store. He was approached by the police and asked what happened. He gave a rational, coherent story about what had happened. And that's something that is important in order to assert precedent and what first is I think a willingness that if you can actually respond during a post-arrest interview in a way that is not bizarre, again, that way is in favor of the trial counsel not seeing anything in the case of the police officer. You have these statements that are pretty central points. Moving to the next stage, I think the thing that sort of leaps out here is the quantum leap, as Lucid did to me, the quantum leap in the sentence when he, after going through the first round, and the judge puts him in for a light jail time but lifetime probation, the judge seems to be, let's arguably say, the judge seemed to be sympathetic to the age and status of the defendant, assuming that he was for all the reasons that you're talking about. But when he comes out of jail and he immediately re-offends, so now he's back before the judge on revocation or probation, and are you saying that it would have not been at all relevant to the judge in imposing that sentence to have the attorney present, defense counsel to present to the court information that might cause the judge to look more carefully at the mental state and problems of this young man and get into why there wasn't the agreed-upon, as counsel's saying, the agreed-upon evaluation by the other doctor, so that the sentence decision would have maybe been better informed or differently informed and may have produced a different sentence? I think that there are quite a few events that transpire from the time that he's still being in prison. He's placed on probation, he's given six months jail, he gets out three months later, he commits four crimes that he's going to get on the next case. And so you have a situation where he's now charged. He's also charged with a probation violation of violating his terms where he approaches a girl and makes a sexual overture. What happens then is that he's actually tried, and he was actually sitting there at the courtroom in front of the same judge that Todek, who was sent home. This is a case where he was actually fraternized because of a solicitation charge. He testified at his trial and basically what you have is you have a lot of indications that the sentence wouldn't have been different at any sort of evaluation he made, but I think we're forgetting one very important point. Right now we're assuming something, which is that the evidence, this litigating evidence, somehow exists and we can't speculate. We don't know what type of evidence there is, so maybe the State Department is pretending that there's fragments of a document that we don't know is there. And what you have is you have him begin to testify in front of the court, and then you've got a pre-sentence report writer. The pre-sentence report writer said that he had excellent read. This is actually, I think, the fourth page of the pre-sentence report, the first one. He had exceptional read quality. Every facet of his life. Now, the issue of competence is different than the issue of pre-sentence. The issue of competence is that if you take that choice to make guilty, you rationally do so. No, I understand that. That's why I'm looking at the sentence. The question is whether there were any mitigating factors that were out there that counsel didn't pursue, could have presented in mitigation of sentencing. We don't know what that could have been. Well... The judiciary hasn't provided to the State Department that, and we're right now speculating. Can I just, in sequencing, make sure I understand, you say the trial in the four that we're hearing about in the next case took place before Judge Hilliard also? Right. Okay. And then, when in the sequence was the sentence imposed in this case in relation to the others before or after or during the second trial, the trial on the second case? In other words, did Judge Hilliard have before him evidence that came out during the second trial before he imposed the sentence in this case? I believe so. On December 8th of 1993, Fisher was acquitted. A molestation of one of the boys this year, in 1993, they had a steel, in 1993, that's the same case out of which the solicitation parties came. On January 10th, I know there was a probation violation report. I believe what happened was that the defendant had admitted to this probation violation, waited for his case to finally be resolved, the other case, and then once it was over, that he wound up in a sentence. I don't know how wrong about that. He admitted after that other case was resolved. But what's important is that Judge Hilliard had an opportunity in the solicitation case to hear what he had to say. That's what I was wanting to know. Right. The problem that we have with this case is that we have two separate cases in the solicitation parties that were formally sentenced by the record. So we actually have three prosecutions in the timeline, so to speak. But in terms of the sentencing, what we do have is we have the trial court already having some of the first three sentences already. All we have to worry about is psychological history. We also have a lot of standing evidence that she is not at all responding to in therapy. In fact, she's quite resistant and rebellious. We have precise instances where he went up to a little girl and said, you know, you want to suck me. We have him committing a patient with an assault against a detention officer. We have reports that he's raped two other children. I mean, when you take a look at everything you have, you have to get it to me in a sentence. I mean, if he goes out and he says, you know, I'm not going to speak to the boys. If you take a look at it, I don't see how this speculative evidence or whatever it might have been could have affected the verdict and could have affected the sentence. So when you take a look at it, I mean, basically what counts as a point of view is, look, he pled guilty. Then, after he violated probation about 30 years, and that's prejudice. It's not prejudice. He got a very good deal. He submitted all the sentences at the same time. And, you know, this is not, basically, his position today is failure to comply. I do want to explain something about these transcripts. He kind of had a right to be pled guilty. In 1992, the verdict, which I told you, was to give a probation to a female. And he did not do so. He very well would have had the opportunity to have had those transcripts provided to him for free. In 1994, after his probation violation had occurred and he was sentenced to prison, he filed one PCR without ever asking for the transcripts. It wasn't until the second PCR that was filed, exactly as he predicted in the other case, that he actually asked to have his transcripts made. But at that point in time, in Arizona, they say versus Baca, and I think that's cited in other cases, but I don't agree. There is no longer the right to appeal on a PCR. So, if the column was in court cases, he didn't have a right to have that made. But, nevertheless, he still had the opportunity to present other evidence besides his transcripts. He could have gotten his attorney to file an affidavit. He could have filed an affidavit that was required under Rule 13.5. He could have submitted all of those medical reports that he did not do. So, basically, what's happening here is that the fishermen's estimates in this court that either they paid a sentence or go back or remand it for an intervention hearing, but the state court never had an opportunity to address the evidence that now is on the court. And the petitioner had explained his failure to provide the whole report to the fact that he's afraid he's in the privilege of being a conscious loan holder. So, the state court hasn't had an opportunity to address all of those questions here. I want to ask if you have any other questions because this case is a very difficult procedure and I know that when I reviewed the case, I saw that Charles McCoy left Arizona because they were trying to get him to come back to the state. I don't think we have any questions. I'm a little distressed that the state finds the procedure confused, but I appreciate your candor. Yes. The court of counsel stated that there is a violation of the constitutional law and also states that the state        case. And I think that the state judge has a right to review the matters that were presented in the case and I think that the state has a right to review the matters     the state has a right to review the matters that were presented in the case. And we have presented it in court and in other public hearings and we have provided a list for them and each of those cases we found some also the state   to review the matters that were presented in court and in other public hearings and we have provided a list for them and each of those cases we have provided a list for them and each of those cases we have provided a list for all... Thank you... I think we have the briefs very thorough on both sides so thank you we appreciate the argument the case Seneca versus Hallahan is submitted...
judges: Beezer, Fisher, England